The argument is 16-1026 Asetek Danmark v. CMI. The argument is 16-1026 Asetek Danmark v. CMI. Mr. Chen, whenever you're ready. Mr. Chen, I hope you're not going to need all that material, but I'm glad you brought it just in case. Sure, Your Honor. Proceed. Good morning, Your Honors. May it please the Court, I am Kyle Chen from Cooley, representing the appellants. Your Honors, I would like to begin today's oral argument by discussing an important legal issue, which I believe is one of first impression for this Court. So this issue is about damages. Specifically, the awarded royalty rate of 14.5% in this case must be vacated because it is based on unproven lost profits. It's not the lost profits, it's the plaintiff's profits. This was based on an estimated expected profits of the defendant. Completely different concepts, theories, facts. So, if Your Honor would allow me to. Well, I will tell you, I want to talk almost exclusively about the remedy, the injunction question here, so I just don't want time to, what in my view might be wasted on a topic that I'm not really seeing your argument on, namely the damages question. Okay. So if you have something at least that you can sharply tell me, then you won't take so much time away from what I think is more contestable. Sure, sure, Judge Toronto. So, let me just very quickly go through it. The idea is that Aztec's expert admitted that what she did was that she backed Aztec's profit margin into an effective royalty rate in order to get to the same amount of lost profits, and they called it a reasonable royalty. So, they didn't prove buffer causation under Pentwood. Pentwood is a buffer causation in the sense of what the plaintiff would have gotten had there not been infringement. You get a royalty even if you as the plaintiff would not have gotten a penny had there not been infringement. That is absolutely correct, Your Honor, but the problem here is that... And in a hypothetical negotiation, if you're trying to assess the value of the thing that was taken, the value of what was taken, which is what we said royalty is about, the value necessarily from the infringer's side of the table is what do I expect to get out of a deal if I enter into one, which is what are the incremental profits, expected profits over what else I might be able to do, and the actual profits have a very strong evidentiary bearing on the expected profits. We said this in Aquashield and Carnegie Mellon. We said it before. I just don't understand why there's some sort of problem here with what was done. Well, the issue is that if you have a profit in mind and you use a profit margin to back into a royalty rate such that you get to what we call the expected profit, but call it reasonable royalty, then economically what you're actually getting is lost profits. Lost profits is the patent owner's lost profits, not the defendant's expected profits from entering into a deal. Two different people, two different sides of the table. Yeah, Your Honor, that's absolutely correct. So what they did was that they are actually using the backing, the profit margin into the effective royalty rate, which is actually a different number based on the defendant's sales price, and then get to the same royalty amount that is effectively the same as the profit that they would have lost had they made the sales of CMI, the appellant. So if I may, I would like to bring Your Honor's attention to page 8077110. I'm sorry, 77110. The numbers don't go back. Yes, 807710. I'm sorry. I apologize. So this is what happened. So on the left-hand side, there's this confidential profit margin of Aztek. So their expert admitted that she started with that and backed that into a royalty rate of 16% that they were asking per unit. So then what happens is that in the end, the per unit royalty ended up almost exactly the same as the per unit profit that they would have lost had they could prove the buffer causation that all the CMI sales actually were made by Aztek. So this is the economic reality. And the admission by Aztek's expert is actually on page 806134. And I quote. This is her testimony. And in this matter, I derived an effective or a profit margin that Aztek received only on the sales from Corsair of a confidential percent. And so using that margin, I can back into all of the expected effective rates. So that's where the problem is. Because if you do that, if this approach were allowed to stand, what happens is that no one will ever try to prove lost profits anymore because it's additional burden. No one will try to prove buffer causation for lost profits. Rather, they would just back the profit margin into an effective royalty rate. One might lose, looking at it from the plaintiff's point of view, a lot more profits than you could ever get as a royalty because the defendant would never agree to that. Well, in this case, actually, that's our position. The amount they're asking will result in a huge profit margin after the royalty is paid and such a tiny one for us. And it would not be reasonable. And actually, on the next page, 807711, it shows the situation where before the 16% royalty on the left-hand side and the right-hand side are the gross profit margins. After the 16% royalty, they were asking, we got such a tiny amount, they got a huge amount. And exactly like Judge Toronto just mentioned, if you're doing that, basically you ended up with such a disparity in the returns that it would be very hard for the accused infringer to agree to such a rate in the hypothetical negotiation. Can I ask you to switch to the injunction? Of course. And I guess I have some specific questions. First, as a background, I gather CMI USA at this point is an independent company, not controlled by Coolermaster. Can I just call Coolermaster the Taiwanese company? Yes, sure. Coolermaster. That is correct, basically. Was that always true? Based on the information we have, CMI USA is owned by an entity. That's different from Coolermaster. I'm sorry. What I changed was the tense, the past versus the present. It's a little bit odd to me to expect that a company once called Coolermaster USA, now called CMI USA, never had any ownership or control relationship to Coolermaster. And I'm just asking if that's true. As far as I know, that is actually true. They still have business relationships in doing business in terms of the CMI USA, once called Coolermaster. Can I ask you, I have a bunch of these little specific questions. When precisely did the injunction in this case take effect? On September 22, 2015, when the judge said he was going to issue it? Or was it not until October 19, when the amended judgment was entered? The injunction was in effect the day, that's actually how we view it, the day when the order was issued, which was September 22. And you have two clients here, right? CMI and Coolermaster. Did you inform Coolermaster of that injunction right after September 22? So on that, I need to clarify a little bit. So before, Coolermaster was dismissed in September 2014. So Coolermaster did not have counsel. We did not represent Coolermaster. It's only after the injunction. Right, so let me just ask you, did you, after September 22, pretty immediately inform Coolermaster that there was an injunction running against them? By October 30, they actually moved to intervene and stay. So somewhere between there's somebody, maybe they read about it in the newspaper. I suspect not them. I think in our discussion with CMI, Coolermaster was informed of the injunction someplace. Right now, I can't pinpoint the exact date. I'm asking these questions in part because it seems to me that one of the kinds of arguments that you do not make in your blue brief is an independent argument about lack of notice and an opportunity to contest the Rule 65 facts. You make an argument that the dismissal with prejudice simply means you can't be enjoined. I'm going to put that aside. You make an argument, you make an extraterritoriality argument, put that aside, and you make what is, I think, the core of your argument that you don't even make an argument, a separate argument, that naming Coolermaster is improper unless the substantive standards of acting in concert or being legally identified with a successor to are not met. You make the argument that the injunction reaches independent conduct and you're not legally identified with CMI. That's correct. You don't make a separate argument. We did not have the opportunity to contest the facts about whether you're really a successor or not. Well, I guess the reason we didn't make that argument was one of credibility. The issue here is, obviously, CMI continues to have a business relationship with Coolermaster, although we can probably argue, we could have argued, that Coolermaster did not have proper notice. Say, for example, the injunction was never properly served on Coolermaster in Taiwan. Coolermaster, at least based on what I know, was informed of the injunction pretty soon. It's within that one month period, pretty soon after the injunction was issued. So they talked to us and hired us to represent them, to intervene and to file the notice of appeal. And because of that business relationship, I actually don't, standing here today, I actually don't know if throughout the process whether they were in a position to argue lack of notice. But in any event, you have not made a separate argument. We haven't made a separate argument. Your argument is, again, putting aside extraterritoriality and putting aside the dismissal of prejudice argument, that because the injunction here reaches conduct by Coolermaster, undertaken on a going forward basis, not in conjunction with CMI USA, that the injunction reaches too far, as contempt would reach too far. That's right. Is that exactly the same, whether they're named or not? That's right. That's actually the key argument. So if we were to send it back for further inquiry into that, what would be the facts that would be relevant to that question? Or do you think that there are no more relevant facts, and as a matter of law, you simply cannot be covered, whether by contempt or naming, by an injunction reaching your now independent conduct? Your Honor, my time is up. May I? Please go ahead. Okay. Thank you. So standing here right now, I don't think we will need any additional facts. The situation is that, as Your Honor has pointed out, the injunction reached Coolermaster's activities completely unrelated to CMI. And we believe, under the law, if the liability is acting in concert, then obviously the scope of injunction should only reach the activities that can be considered to be acting in concert with the actual enjoined party, as opposed to treating Coolermaster as if it were an independent party that went through trial and got enjoined by CMI. But my reading of the case law on this is that while sometimes these two substantively different things are put under the same heading of in concert, in fact, there are two separate substantively different things. One is when the person subject to the injunction, whether by contempt or name, is acting to help the continuing violation by the named defendant, a defendant who actually had the is persons who are treated as legal successors. Yes. And a successor here may or may not mean something narrow. But for that, the successor can be subject to the injunctive obligations, even if the original defendant disappears, is dissolved. And the question, I think, is are you one of those? Half of you. Coolermaster, half of you. Are you one of those? Well, Coolermaster is not one of those. And specifically, as Your Honor just pointed out, there is this acting in concert liability and there is a separate different liability, which is legally identified, which I guess is what Your Honor is referring to. Yes. So given that Coolermaster and CMI USA, based on the record, they are separate corporations, and Coolermaster was dismissed with prejudice and did not participate, the district court actually never found legally identified form of liability. Was there an issue raised? Did the other side make that allegation? Or was that just never on the table and never discussed? It's a little bit unclear because when they cited case law, some of the case law did mention both forms of liability. But based on my understanding of their briefs, their conclusion is still only that Coolermaster was acting in concert with CMI USA, not that Coolermaster was legally identified with CMI USA. So the latter part was not in their conclusion, and the latter part of being legally identified was never found by the district court. So as a result— We've exceeded your rebuttal time and gone over that. So why don't we hear from the other side and we'll restore it. Good morning, Your Honor. May it please the court. I'll jump right into the injunction unless you have any questions about the other issues. Could you tell us whether or not—I mean, if we're on to this question about whatever we call a lethal successor or successor, I didn't see that that was an argument that you pressed in order to get this— As far as formal corporate succession, we didn't pursue that because there was no evidence of that. What we have is Coolermaster purporting to be a separate entity. But what we have in the record is acting in concert, that Coolermaster and CMI are acting in concert together. I get that. I get that you have that they're acting in concert. My question with respect to the injunction that was imposed, however, is it seems to me—so you can tell me why I'm wrong if I'm wrong—that you could get Coolermaster acting in conjunction with CMI under paragraph one of the injunction. Paragraph two of the injunction seems to me quite different. It seems to go to Coolermaster activities with persons completely outside, not related to in any way, shape, or form, CMI. This is the notice requirement. Well, I'm just asking you, am I reading it correctly that any conduct, future conduct in connection, in concert between CMI and Coolermaster, contempt would be covered under paragraph one of the injunction, am I right? It would, and by automatic action of 65D, which— I see. And it seems to me paragraph two is something other than one, and so it goes only, or at least, to conduct that Cooler might engage in involving parties and entities completely separate and distinct from CMI. Am I reading correctly the two portions of the injunction? You are reading correctly that there are two different paragraphs, one naming CMI, that it can't commit infringement in the United States, the other one saying— With or without Cooler? With Cooler. I mean, wouldn't Cooler be in contempt if CMI and Cooler proceeded to conduct their infringement activities? Wouldn't both parties be in—couldn't both parties be in contempt under one? Under that paragraph, under one, yes, if CMI were to continue its infringing activities. Okay, so what does two cover then? Well, so what two covers— Do you agree that two does not cover—covers activities that are completely independent of anything CMI is doing? It doesn't, and here's why. It doesn't—it requires anything that violates paragraph two, which is Cooler Master can't infringe in the United States. The only way that can happen is with CMI's cooperation because, remember, Cooler Master and CMI have a pre-verdict agreement that any activity in the United States belongs to CMI. Can you clarify this? At least when I checked all the passages that you cited, nothing in there said that that infringement wasn't terminable at will by Cooler Master. It was an oral agreement. They certainly didn't put any of that information in the record. What we had in the record— But we do not, in fact, have an evidentiary basis for saying only if CMI USA agrees can Cooler Master start using different avenues into the United States. Well, if it does, it needs CMI's permission to do that. Not if it's terminable at that will. But there's no evidence that it's terminable at will. It's not terminable at that will. All we have in the record— I'm sorry. There's no evidence either way. There is the Cooler Master witness at the site where he talks about the relationship they have with Cooler Master and how the parties are very careful that when a product is coming into the United States that that's going to be CMI's sale. RR is present tense. Well, in present tense, if they're going to change the agreement, they're going to change the agreement with CMI. There's nothing in the record that says that Cooler Master can do this unilaterally. Or the other way. But you've just made an argument that we can conclude that in order for Cooler Master to reroute its products into the United States through some distributor other than CMI USA, CMI USA has to agree. And I don't see the basis for that in the record. And there's also the problem that Cooler Master and CMI work together to develop the products. They work together to market the products in the United States. They work together to price the products in the United States. So there's that basis of the district courts acting in concert as well. Can I go back, though? I mean, I guess maybe you're not understanding my question, I think, because you're not answering it. If they act in concert going forward, that activity by either Cooler Master or CMI, it seems to me, would be covered under paragraph one of the injunction. Am I wrong about that? I don't think you are. I don't think you are. Okay, so I'm right. So all of that is covered by one. Right. So what is covered by two? Is it not activities by Cooler Master that are absolutely separate, unconnected, and No, the way we always looked at that was Cooler Master, the reason that's legitimate is because Cooler Master was acting in concert with CMI. But you already told me that any future activities in which they are acting in concert, Cooler Master gets contempt under paragraph one. It would be covered. So what more, wait, let me, what more does paragraph, what conduct does paragraph two get to that paragraph one does not cover? It doesn't cover any additional conduct. Let me explain why we put that in. Okay, so we've established paragraph two doesn't cover any additional conduct. Paragraph two makes explicit what 65D already made implicit, which is persons acting in concert with CMI. Where does paragraph three, well, I'm sorry, it's paragraph three then. Where does paragraph three talk about acting in concert with CMI? It doesn't, but that was the basis for us asking for paragraph two was to make explicit so that Cooler Master couldn't later complain that it didn't have notice. The reason for paragraph two was to provide notice to Cooler Master. The language here is getting in the way of the substance, including the language of Rule 65. Rule 65 uses in concert language to refer to two different things. One, to bring it home to this case, would be Cooler Master doing stuff to assist CMI in itself, violating the injunction. The other is, if Cooler Master is legally identified with a successor to, with respect to this line of business, CMI, Cooler Master engaging in conduct that is importing, selling, et cetera, these products. Even if CMI decides to go into a wholly different line of work and isn't involved at all, is the latter covered by paragraph three? If Cooler Master goes into business and CMI is not connected at all? Correct. Yeah. Paragraph two would require that the two be acting in concert. Now, it doesn't require. It's not that. Let's get the paragraph numbers right because paragraph three of the injunction, that's the one that starts Cooler Master Co., Ltd. I'm sorry. Yes. Does it cover activities, for example, Cooler Master importing into the United States directly to some customer, completely bypassing CMI USA, the products listed in the injunction? Well, it still would because those infringing products were created by the two together. So that's another part of the acting in concert finding of the district court. But in concert does not actually require CMI to be doing anything more than it once did in the past. Then it wants – for that aspect, correct. Right. Right. Because CMI and Cooler Master jointly developed the products. They came up with a marketing strategy on the products in the United States. They came together with a pricing strategy, sales. I don't understand why if we're talking about just aiming at infringing products that have previously been created by those two parties acting in concert, why would that not be covered under paragraph two? And, Your Honor, the reason we insisted on the other paragraphs was notice for Cooler Master because this litigation has been – the question you asked earlier, has Cooler Master ever owned CMI? We never got a straight answer to that question either. We keep getting people who don't. Well, let me ask you, could the same have been accomplished then? Look at paragraph two if it says, and those persons including Cooler Master, if they are in active concert of participation with them. Is that all you wanted to do was get Cooler Master's name and paragraph three? For that paragraph, yes. Yes. But don't you understand the concern that paragraph three, I think fairly read, so tell me if I'm wrong, paragraph three goes way beyond activities that Cooler Master may be engaged in that are related to CMI. I think that's a fair reading of paragraph three, is it not? I don't think it is when you look at the context of the parties. ACETEC and the district court had never envisioned that completely independent conduct by Cooler Master would be covered by the injunction. So why would you need to rewrite paragraph two? It seems to me paragraph two seems to cover everyone. And you're saying, well, the only thing that paragraph two doesn't do is call out explicitly Cooler Master? Correct. So if you said, and those persons in active concert or participation with them who receive notice of the order, including Cooler Master, hereby immediately, so that would be okay? That would have been another way to do it. So why would we need to call out Cooler Master? We needed to call out Cooler Master. Paragraph two, as I understand it, would cover other persons as well, right? Anybody acting and those persons in active concert with them who receive notice of the order. Well, there's no dispute that they receive notice of the order, right? Correct. So what I'm not understanding by Cooler Master would have to be called out. Well, let me explain what happened after the verdict. ACETEC was faced with not only a spike in infringing sales after the verdict from CMI, but the nature of the sales coming into the United States changed as well in two ways that are in the record, but there are more, as it turns out. But in the record, we have two parts. We have Cooler Master on its website, on Cooler Master's website, starts selling CMI products, makes CMI products available on Cooler Master websites and represents that they're Cooler Master products, and these are websites that are in the U.S. They're not foreign websites. They're U.S. websites targeted at U.S. customers. What's more concerning to ACETEC was all of a sudden AMD starts releasing an infringing product. AMD is partnering with Cooler Master to release an infringing product. Well, AMD is an American company importing products into the United States. That's CMI's customer according to the arrangement that Cooler Master and CMI had before the verdict. We contacted counsel, prior counsel who was also counsel for both CMI and Cooler Master, and said how can you be doing this? How can AMD be doing this when CMI is under threat of an injunction? The injunction hadn't been entered yet, but we wanted answers for how AMD could be doing this, and CMI disclaimed any responsibility and said notwithstanding our exclusive arrangement with Cooler Master, AMD is getting the products from somewhere else, and that's what triggered our concern that Cooler Master was going to keep playing games. I understand. And I understand my concerns might have arisen with respect to trying to get the right guys here. The greater concern I have, however, is that paragraph 3 seems to stand on its own and doesn't implicate CMI, doesn't require CMI to be in any way, shape, or form related to anything going on in paragraph 3. And I think I hear you saying, well, that would be a problem, but that's not what we intended to cover in paragraph 3. Correct. Like you don't want to elevate form over substance, we didn't want Cooler Master to start trying to elevate form over substance by saying our name's not in the injunction, it doesn't cover us. And so we wanted to make explicit what 65D makes explicit. Well, why would it not cover them? I mean, we have injunctions all the time, and it says CMI, it names CMI, and those persons in active concert or participation with them who receive notice of the order. I mean, why would that not cover Cooler Master? I don't want to sound glib, but the arguments they've been raising in this case, that would not surprise me if they raised that argument as well. Well, I mean, believe me, we see a lot coming through here. I understand. I mean, nothing would surprise me in terms of what the lawyers maybe people were advising. It wasn't technical. But that doesn't, you understand that that can't influence our view of the legal propriety of a particular part of an injunction. Right. I understand. Can I get back to, I guess, and maybe I'm just confused about this, but if I am, then I'm still confused. They will say, if we just have paragraph 2, that when they ship directly to AMD and CMI is not involved, that's not in concert. If you want to get us under that for contempt, you have to establish the alternative of legally identifying us for our new CMI independent activities with CMI. So they – How does that get nailed down in advance if it's proper to do so? Well, in advance of – Well, the only evidence right now on the record is – Or do we have to wait? I don't think we have to wait. I think the reason was to get this prospectively resolved so that it's very clear. Coolermaster had a chance to come in and put in whatever evidence it wanted to about the relationship with CMI. We were very upfront saying that Coolermaster couldn't possibly come into the United States without CMI's agreement. No attorney ever raised the argument you just raised, Judge Taranto, which is that we were able to sever the agreement. They could do it without CMI's agreement. Right. There's not even argument in the record that that's possible to be done. So what we have in the record is an existing – Not yet. Well, not yet. Counsel just said they have nothing left to put in the record. They already had an opportunity to put whatever they wanted in the record. So your answer is that would be covered under paragraph 2, the scenario you've laid out. Correct. I forget the names of the parties, but if they're acting clearly in concert or as an agent for or in conjunction with CMI, then they're clearly covered, and Coolermaster continues to do what you allege they have been doing. That's covered under paragraph 2. Correct. We have no intention of expanding Rule 65D beyond what this court has already said it can cover, which is active concert with the named defendant. Any activity in the United States has got to be in concert with CMI because there's – And you acknowledge that paragraph 3 does not require that. No. Well, paragraph 3 is proper because it would only cover activities of Coolermaster and CMI together. So it was never intended – Even though it doesn't limit it to CMI activities. It limits it to participation with anyone. The injunction – but when you look at the judge's order explaining why paragraph 3 is there, it's because CMI and Coolermaster were acting in concert together in designing the products, selling the products in the exclusive arrangement that they had where CMI and Coolermaster were taking – Well, I know we're going in circles, but that's the case. I don't understand why that stuff isn't included – isn't already covered by paragraph 3. Our position is that it is covered, that paragraph 3 naming Coolermaster explicitly was to eliminate wiggle room when it comes time to move for contempt. That's why it's there. But wiggle room only in connection with activities that clearly implicate and involve active participation by both CMI and COOL? Correct. Right. Right. Thank you. Thank you. So, Your Honors, we disagree with the allegations, but I believe Your Honors have nailed the exact issue that we're appealing for. The situation here is that we actually don't dispute that to the extent Coolermaster is found to be acting in concert. Suppose paragraph 3 goes away. Suppose maybe even there's an express reference including Coolermaster inserted into paragraph 2, and AMD calls you up and says, this is just between us, don't tell the guys down at – is it Chino? Is that where CMI is? In Chino? Yes. Yes. That's correct. Not in Chino. Somewhere. Send us some of these goods. Are you in contempt or not? They say you are because the only way you can do that is with CMI's implicit acquiescence or maybe because you two created these products together. But CMI has nothing to do with those shipments to AMD. Are you going to dispute your contempt or not? Your Honor, to the extent that such activities with AMD – With what, I'm sorry? With AMD to have sales into the United States – You should have picked a company without initials. Sorry. So to an extent that such activities, sales activities to AMD into the United States, and in view of the exclusive – well, I shouldn't say that because actually the exclusive agreement between Coolermaster and CMI, they're really about the retail market. But regardless, the point is that to the extent – So already we now have a dispute about whether there's going to be contempt. How are we going to resolve that, we being the judicial system? Well, depending on the facts, if the judge determines that regardless of the exclusive agreement between Coolermaster and CMI being predominantly in the retail market, the sales to AMD, given that it's to the United States, if the judges believe that means it's acting in concert with CMI because the U.S. is supposed to be CMI's territory, then we do concede in that sense the contempt, which we are not doing. Are you going to contest that that activity is in concert with CMI? Sorry about the red light, but please answer the question. I believe Coolermaster will look at the actual circumstances to make that determination. Right now I understand the hypothetical. I believe if the court decides given CMI is in the U.S. and the sales are going to the U.S., which, by the way, Coolermaster does not do and has no intention of doing. But if that's the situation and if the court decides that somehow it's actually aiding and abetting CMI because the U.S. is supposedly CMI's territory, then yes. To be sure I understand, but I don't recall your questioning that direct sales to a different customer in the United States were permitted under the injunction. We're not arguing that. We're not arguing direct sales to another U.S. customer are permitted. To a U.S. customer. To a U.S. customer. We're not disputing that. We actually do believe, even though as Judge Tromgold just pointed out, there may be some factual dispute on that issue when the circumstances actually arise. The reality is that we are not doing that. We are not selling directly to the U.S. Everything, based on my understanding, Coolermaster is selling the accused products only to countries outside of the United States. But you're not contesting the notice provision directly. Are you? That you can't circumvent this understood injunction by just putting a few other parties in the loop. Your Honor is absolutely right. We do not intend to do that. And we will not argue that in order to circumvent the injunction. With respect to sales to the U.S., we definitely will not.  Thank you, Your Honor.